LAND, Justice.
 

 In the year 1924, J. G. Trimble died in the City of Shreveport, La., intestate, leaving a large and valuable estate, consisting chiefly of community property. He also left a surviving widow in community, Mrs. Martha H. Trimble, and three minor children, issue of said marriage: ■ Robert ■ M. Trimble, Dorothy H. Trimble, and Guy Trimble.
 

 
 *401
 
 In No. 38261 on- the docket of the First judicial district court, Caddo parish, entitled “Succession of J. G. Trimble,” by-judgment of the court, Mrs. Martha H. Trimble was recognized as surviving widow in community and usufructuary, and Robert M. Trimble, Dorothy H. Trimble, and Guy Trimble were recognized each as owner of a one-sixth interest therein, subject to the usufruct of their mother.
 

 On or about October 13, 1930, Guy Trimble departed this life, leaving as his sole and only heirs his mother, Mrs. Martha H. Trimble, Dorothy H. Trimble, and Robert M. Trimble. Upon the death of Guy Trimble, Dorothy Trimble and Robert Trimble each became the owner of an additional three-forty-eighths interest in the property, and each is therefore now the owner of an eleven-forty-eighths interest.
 

 There is included in the community property, subject to the usufruct, a residence located at No. 2912 Samford avenue in the city of Shreveport, La. This property was leased by plaintiff, C. M. Perryman, from Mrs. Martha H. Trimble for a period of one year, commencing on May I, 1934, and ending on April 30, 1935, at a rental of $30 per month, payable in advance on the 1st day of each month. This rental was paid by plaintiff to Mrs. Martha H. Trimble each month to and including January, 1935.
 

 On January 28, 1935', plaintiff was notified by Robert M. Trimble by letter that he and his sister, Dorothy H. Trimble, claimed ownership each of an eleven-forty-eighths interest in the property arid demanded one half- of the monthly rentals, whjle Mrs. Martha H. Trimble, as owner of one half of the property as widow in community, and as usufructuary of the other half, claimed payment of the full monthly rentals to her.
 

 Under these circumstances, availing himself of the provisions of Act No. 123 of 1922, plaintiff obtained an order from the First judicial district court to deposit the rent as it fell due in the registry of the court, and cited Mrs. Martha H. Trimble, Robert M. Trimble, and Dorothy H. Trimble to assert their claims to' the fund so deposited.
 

 In her answer, Mrs. Martha H. Trimble claims that the premises 2912 Samford avenue in the city of Shreveport were acquired during the regime of the community, and that, as surviving widow in community and usufructuary, she is entitled, both by law and under the judgment of the First judicial district court of Caddo parish in the matter of the “Succession.of J.G. Trimble,” No. 38261 on the docket of that court, to all of the rents of the property acquired during marriage, including the property above described, and is therefore entitled to the entire amount of rent deposited in the registry of the court by plaintiff herein.
 

 The sole basis of the claims of defendants Robert M. Trimble and Dorothy H. Trimble to one-half of the rent deposited in the registry of the court is their contention, as shown by their respective answers, that their mother, Mrs. Martha H. Trimble, has relinquished, released, and renounced her usufruct of the estate of
 
 *403
 
 J. G. Trimble, and,- consequently, of the property herein involved.
 

 The case went to trial on the issues thus made, resulting in a judgment discharging plaintiff in concursus from all further liability, and providing further “that defendant and claimant, Mrs. Martha H. Trimble, be decreed to be the owner, or usufructuary, of the entire fund deposited in Court, and, as such, entitled to the payment thereof out of the Registry of the Court.”
 

 From this judgment, which in effect rejected the demands of Robert M. Trimble and Dorothy H. Trimble, Robert M. Trimble appealed, originally to the Court of Appeal, Second Circuit, which transferred the case to this court.
 

 1. There has been no division of the community property in this case, either by partition in kind or by licitation. That fact is clearly shown by the claim in this suit of Robert M. Trimble and Dorothy H. Trimble to an undivided eleven-forty-eighths interest each in the residence 2912 Samford avenue, in the city of Shreveport, admitted to be community property, and to one-half of the rental due on this property by plaintiff.
 

 This suit was brought February 19, 1935, The fact that there has been no partition of the community property is further and indisputably proved by the following joint letter signed by defendants Dorothy H. Trimble and Robert M. Trimble, agent and attorney in fact, of date January 19, 1934, and addressed to the defendant Mrs. Martha H. Trimble:
 

 “Robert M. Trimble,
 

 “723% Wilkinson Street,
 

 “Shreveport, Louisiana.
 

 “January 19, 1934.
 

 “Mrs. Martha H. Trimble,
 

 “618 Herndon Avenue,
 

 “Shreveport, Louisiana.
 

 “Dear Mother:
 

 “Since you turned over the list of our property in 1929 we have owned the estate jointly as you know and as you have been informed by Mr. Bullock and others on many occasions. The Home place at 618 Herndon is on this list and is owned jointly by yourself, Dorothy and myself.
 

 “The law specifically states that where one party in a co-ownership uses the property of such ownership they must pay for the same. A law case proving this point is the Succession of Bauman, 30 La.Ann. 1138.
 

 “Now since 1929, the year of the cancelling of the Minor’s mortgage you owe rent on the premises, you have occupied and continue to occupy and at the rate stated in a previous letter, viz: $60.00 per month. I shall compute my part of this rent to May 23, 1934 and Dorothy’s to December 31, 1934, and I will ask you to send a check at once for Dorothy’s part of the January 1935 rent, being the present record ownership of
 
 msth.
 
 or $13.75 per month.
 

 “Very Truly yours,
 

 “Dorothy H. Trimble
 

 “By Robert M. Trimble,
 

 Agent & Atty. in fact.”
 

 
 *405
 
 In a letter from Mrs. Martha H. Trimble to Robert M. Trimble of date May 19, 1934, it is stated:
 

 “Your ownership of %th interest in your father’s estate is found on Page 571 Book 254 of the Conveyance Records of Caddo Parish. The record shows a 3/8ths interest in. your brother Guy’s estate. The record of this ownership is found on Page 371 of Book 298 in the Conveyance records, so your proportion of ll/48ths in the property that we have on hand represents your interest in this estate with the exception of the Jordan Street property and other property that was listed in Guy’s Succession according to a different proportion of ownership.” T. p. 57.
 

 The co-ownership of Robert M. Trimble and of Dorothy H. Trimble of the community property- with their mother is very far from being a partition by division in kind of the common property, and full ownership by each of these heirs of certain specific pieces of property.
 

 Exhibit “P-6,” relied upon by Robert M. Trimble, appellant, to show a partition, has the heading:
 

 “Estate of J. G. Trimble
 

 “Owned by:
 

 “Mrs. Martha H. Trimble... .one-half
 

 “Dorothy H. Trimble........one-sixth
 

 “Guy H. Trimble...........one-sixth
 

 “Robert M. Trimble........one-sixth.”
 

 Then follows a list of the community property.
 

 This exhibit merely listed the property and announced that Robert #M. Trimble and Dorothy H. Trimble had an undivided one-sixth interest each therein. The law itself gave to him and to his sister that interest as the virile portion of each as the heirs of their deceased father.
 

 A co-owner merely has the right to demand a partition. But a mere deed to several parties as co-owners does not and cannot effect a partition in kind.
 

 The contention therefore of Robert M. Trimble, appellant, that his mother released, relinquished, and renounced her usufruct by partitioning the property among the heirs is not borne out by the actual facts of the case.
 

 2. Nor is the contention of appellant well taken that his mother released, relinquished, and renounced her usufruct by the cancellation of the legal mortgage on the property given by her as tutrix. We know of no decision of this court to this effect, nor have we been cited to any case so holding. The legal mortgage of the minors was canceled upon their own orders after they had become of age, or rather after Dorothy H. Trimble had arrived at majority, and Robert M. Trimble had been duly emancipated after he had arrived at the age of 18 years.
 

 The plain reason why the tutrix had this mortgage canceled, with the consent of -defendants, and had obtained powers of attorney from them, is shown by the following letter:
 

 “1115 Slattery Building
 

 “Shreveport, La.
 

 “May 5, 1929.
 

 “Dear Dorothy and Guy:
 

 “I enclose a list of our property which is necessary legal step in order to remove
 
 *407
 
 the minor’s mortgage. From the time you. received this list, you are allowed ten days to consider it carefully. Mr. Bullock will prepare a paper for you to sign which will show that you have received a list of the property. After the bank submitted a list of the property that they are handling for us, I consulted with Mr. Bullock and it was found that the note and house of the Hammet Building Co. was the property of you children so it was listed separately. By an oversight this property was listed twice, so I have made a penciled memoranda, asking you to make the proper deduction. However, there is no attempt to set up any final values, as they fluctuate so much. Some of the stocks and notes are considered worthless. There is entirely too much tied up in real estate. There is not sufficient income to carry the expenses of the property for much of it produces no revenues whatever. Last year the rent property cost more than a thousand dollars to maintain in excess of the rents derived from the property. With the minor’s mortgage removed, I can sell some of the houses and get investments that are safer and pay more than real estate.”
 

 There is not one word mentioned in this letter about relinquishment, release, or renunciation of the usufruct by Mrs. Martha-H. Trimble, surviving widow in community. The plain reason for the cancellation of the mi.nor’a mortgage, as stated in the letter, was the desire of the tutrix to conserve the estate for the mutual benefit of all concerned, in the beginning of the year 1929, in which the greatest depression in the economic history of the nation took place.
 

 Not one word has been uttered by the heirs about the relinquishment, release, or renunciation of the usufruct by their mother, from the time she qualified as tutrix in the year 1924, until January 19, 1934, and in the answers of Robert M. Trimble and Dorothy H. Trimble filed in the present suit October 15, 1935, and October 18, 1935.
 

 The fact is that Guy H. Trimble, on May 21, 1929, Dorothy H. Trimble, on June 25, 1929, and Robert M. Trimble, on May 23, 1929, authorized the cancellation of the legal mortgage in this case by separate notarial acts.
 

 Both Guy H. Trimble and Dorothy H. Trimble were over 21 years of age, and Robert M. Trimble was over the age of 18 years and a duly emancipated minor, at the time the cancellation of the legal mortgage was authorized by each of them.
 

 Robert M. Trimble and Dorothy H. Trimble were fully aware of the fact that each had inherited, and had been recognized as owning, an undivided interest in the community; and both well knew that they had authorized the cancellation of the legal mortgage, more than 5 years before the present suit was brought, yet neither of them, though legally qualified to take action during this long interval,, attacked the usufructuary’s rights in a direct action in which a complete accounting could ]?e had. The case smacks of such acquiescence by laches on the part
 
 *409
 
 of these heirs as to induce the conclusion that the present attack upon the rights of the usufructuary is more of an afterthought than of intrinsic merit.
 

 3. Finally, it is contended by Robert M. Trimble that the letter marked “P-9” and dated May 19, 1934, filed in evidence, admits the relinquishment by Mrs. Martha H. Trimble of her rights as usufructuary.
 

 In connection with the letter of May 19, 1934, in which Robert M. Trimble contends that Mrs. Martha H. Trimble renounced her usufruct, was a list of property, forming a part thereof, in which she had agreed to convey to Robert M. Trimble, in exchange for his interest in certain other property in order that a settlement between him and his mother might be effected. The letter was merely
 
 ^
 
 part of general negotiations between the parties for a settlement, which was never effected, for the reasons that Robert M. Trimble refused to comply with his part of the obligation imposed upon him by the letter, which declares:
 

 “As I (Mrs. Martha H. Trimble) shall deed to you certain pieces of property, you will also agree to deed to me your interest in any property in which you have a joint ownership.” See letter of May 19, 1934, T. pp 57, 58. See Mrs. Trimble’s testimony, T. pp. 77, 78, 79, 80, and 81 of the evidence.
 

 The list of the property which Mrs. Martha H. Trimble agreed to deliver to Robert M. Trimble and which formed a part of the negotiations between them looking to a settlement is found at pages 29 and 30 of the transcript. At the bottom of this list is the following:
 

 “May 21, 1934
 

 “I agree to deliver to Robert Trimble the properties herein listed on May -22, 1934.
 

 “Martha H. Trimble.”
 

 As Robert M. Trimble refused to comply with his part of the obligation to deed to Mrs. Martha H. Trimble his interest in any property in which he had a joint ownership, the letter of May 19, 1934, becomes purely a part of a tentative agreement for a settlement between the parties, which was never consummated. The receipt and release which Robert M. Trimble was to have delivered to Mrs. Martha H. Trimble, when the settlement had been completed by reciprocal transfers of property by the one to the other, is found at pages 35 and 36 of the transcript, and is not signed by Robert M. Trimble.
 

 It is true that the letter of May T9, 1934, among the various stipulations therein contained, states: “I am also renouncing the usufructuary which would give me a 65% ownership at the present time of the entire estate.” Obviously, such alleged renunciation, contained in a purely tentative agreement which was never executed by the parties, cannot be given any legal effect whatever, particularly at the demand of the party who refused to accept the settlement in accordance with the terms of the agreement.
 

 4. As a last resort, defendant contends that his mother verbally relinquished.
 
 *411
 
 released, and renounced her usufruct of the estate. Defendant testified on the trial of this case that, in a conversation that took place in Mr. Bullock’s office, the attorney for the tutrix, Mrs. Martha H, Trimble, May 17, 1934, “Mr. Bullock expressed the opinion that my mother had lost her usufructuary rights in turning over that property in 1929.”
 

 “Q. Was your mother present?
 

 “A. My mother was present at that time, and in reply to that my mother said that she wanted that minor’s mortgage released at any cost, that a minor’s mortgage stood for dishonest people, and she did not deem it necessary to have a mortgage against her property.
 

 “Q. What was she then talking about ?
 

 “A. About the usufruct.
 

 “Q. About what took place in 1929?
 

 “A. Yes.
 

 “Q. Did any discussion take place as to renunciation of the usufruct?
 

 “A. Let’s see. She wrote this letter shortly after a conference with Mr. Bullock. She wrote this letter upon May 19th. ‡ ‡ ‡
 

 “Q. In which she renounced the usufruct?
 

 “A. Yes, she said she renounced the usufruct upon the entire estate which would give her a sixty-five percent (65%) ownership.
 

 “Q. Do you recall how she got that figure of sixty-five percent (65%) ownership which she was renouncing ?
 

 “A. Judging from mortality tables, with expectancy of life at eighteen more years, and usufruct valued at six percent (6%) compound interest, present value would be thirty-five cents (35í¡) upon the dollar, and if she could invest that money at six percent compound interest she would have a sixty-five per cent (65%) ownership.” Evidence, pp. 23, 24 (93, 94).
 

 Mr. Otis W. Bullock, an able and reputable attorney of the Shreveport bar, represented Mrs. Martha H. Trimble in the tutorship and succession proceedings in this case. Mr. Bullock did not state in the conversation between Mrs. Trimble, Robert M. Trimble, and himself at his office on May 17, 1934, that Mrs. Trimble had renounced the usufruct upon the entire succession property by turning over the property to defendants in 1929. As a matter of fact, the property was not turned over to these defendants at that date, nor at any date since. It has never been partitioned into separate parts by division in kind, and' defendants, at no time, have had the administration of the property. What Mr. Bullock did state in that conversation is as follows:
 

 “A. No, I did not express any opinion that she had lost the usufruct (it) was the question of whether or not it continued on the particular property that he had taken or was about to take in partial or whole settlement of his interest in the succession, I remember that came up on one occasion and was discussed in the office, but the question of whether the usufruct upon the entire succession property had been renounced was a controverted ques
 
 *413
 
 tion. There was a difference of opinion between Mrs. Trimble upon the one hand and Robert upon the other and I took no part in that.”
 

 Mr. Bullock further testified that he had not given any opinion that the usufruct had been renounced as the effect of the cancellation of the minor’s legal mortgage, in the convesation that took place at his office on May 17, 1934. Evidence, pp. 58, 59 (128, 129).
 

 Mr. Bullock also testified that he had seen the letter of May 19, 1934, but did not know anything about it, and that: “Of course at the time of the conversation that we are discussing that letter had not been written, so he cannot have been relying upon that letter.” Evidence, p. 66 (136).
 

 He further testified as follows:
 

 “A. But I do not recall that there was ever any conversation about the usufructuary after that, that amounted to very much, one way or the other.
 

 “Q. Except you do remember that Mr.
 

 “A. (interrupting). On that one occasion in my office Robert took the position there which made it very difficult to my mind, that he thought the usufruct had been waived or renounced. Mrs. Trimble did not consent to that and did not join in that idea at all.” Evidence, pp. 67 and 68 (137, 138).
 

 When asked why he effected the cancellation of the mortgage, Mr. Bullock testified as follows:
 

 “By the witness: Well about the best answer I can give is that the same purpose was embodied that is embodied in the can- , celing of every other minor’s mortgage that has been canceled. They are just in the way, they incur great expense, and I understood that Mrs. Trimble was prepared to make settlement with the minors in accordance with the facts as set forth in that application. Insofar as I knew the application reflected the actual facts as they existed and formed the basis for the cancellation of that mortgage. The real purpose from the beginning was that they wanted the mortgage canceled and out of the way because it hindered them in the handling of the property. They could not sell a piece of property without going into court and getting an order of the court. That formality had to be gone through with every time and it was burdensome in the way of expense.” Evidence, pp. 73 and 74 (143, 144).
 

 It would be difficult to deduce from the reasons assigned for the cancellation of the minor’s mortgage that the, surviving widow in community had the slightest intention of relinquishing or renouncing her usufruct. Manifestly, she had no such intention.
 

 Returning to the issue of releasing the usufruct, Mrs. Martha H. Trimble, widow in community, testified as follows:
 

 “Q. Robert in his testimony this morning stated that you had told him on one or more occasions that you were anxious to get rid of this usufruct because the property was burdensome to you and wanted him to take it or something to that effect. What, if anything, was there to thát?
 

 
 *415
 
 “A. I never indicated that I was weary of the usufruct. What I was weary of was having to go to court frequently before the minor’s mortgage was released. I was weary of having to see attorneys so much of the time and I was weary of the detail and expense. The only way in which I had reference to the usufruct in our conversation sometimes was in a joking way to the effect that it seemed the children were receiving so much of it in education and burdening the property,” Evidence, p. 89 (159).
 

 Mrs. Martha H. Trimble also testified as follows:
 

 “Q. I understand. In other words it was shown upon that list as belonging to the children and not to you, but you continued to administer under that power of attorney, is that right? However, you did list it as belonging to them and you did list their interest in the community . property ?
 

 “A. A one-sixth (1/6) interest. There was no effort made to divide it. I understood that merely the one-sixth interest was shown.
 

 “Q. The reason no division was made was that you wanted to continue to handle the property not as usufructúary but as agent under the power of attorney?
 

 “A. There was no discussion about the usufructuary at all.
 

 “Q.
 
 No discussion at all?
 

 “A. None whatever.
 

 “Q. You understood that in this division you were setting up that did not make any difference as to usufruct at all?
 

 .“A. No, we were not dividing the property at all and nothing was said about it.” Evidence, p. 12 (82).
 

 A fair preponderance of the evidence in the case is in favor of the defendant Mrs. Martha H. Trimble, surviving widow in community, that she did not renounce' the usufruct by any oral statement or agreement made by her.
 

 As to the powers of attorney in the case, Mr. Bullock testified as follows:
 

 “A. Yes, I prepared a power of attorney for each one of the minors because I had explained to her that the property was owned in indivisión and one was entitled to possession as much as the other. They 'being absent she wanted to .handle the property and I told her that was the only way she could do it, through power of attorney.
 

 “Q. You told her that they were entitled to possession equally with her and the best way to do it was by power of attorney, which would put her in complete control of the entire property?
 

 “A. Well I explained to her that they were all joint owners and she could not have possession to the exclusion of the minors, nor they to the exclusion of her. Of course that was all subject to whatever usufructuary rights there were. That matter was never discussed with me.
 

 “Q. No usufructuary rights were ever received in any of these documents?
 

 “A.
 
 I do not recall there was any except in the judgment of the Court recognizing the widow and heirs.” Evidence, p. 65 (135).
 

 
 *417
 
 Defendant Robert M. Trimble testified as to the condition of the estate as fol-. lows:
 

 “There has been only a partial liquidation of accounts.
 

 “Q. And a complete and final settlement of the estate is still in the future, is that right ?
 

 “A. Yes.” Evidence, p. 49 (119).
 

 For the reasons assigned, it is ordered that the judgment appealed from be affirmed, and that defendants Robert M. Trimble and Dorothy H. Trimble pay the costs of the lower court, and that Robert M. Trimble, appellant, pay also the costs of this court.
 

 HIGGINS, J., absent.